**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| PAN AMERICAN MARITIME, INC., | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| | § | |
| v. | § | C.A. NO. B-04-188 |
| | § | |
| | § | |
| ESCO MARINE, INC., ET AL. | § | |
| DEFENDANTS. | § | |

## OPINION AND ORDER

BE IT REMEMBERED that on May 10, 2005, the Court **GRANTED** Defendant's Motion to Dismiss [Dkt. No. 14]; and **DENIES** Defendant's Motion to Reconsider the Court's order granting Plaintiff leave to file a late response to Defendants' Motion to Dismiss.

### I.  Factual Background

Plaintiff brings this civil action under 18 U.S.C. § 1962(a) and (c)[1] of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *See* 18 U.S.C. § 1961, *et seq.*  The sole basis for federal jurisdiction rests with Plaintiff's RICO claims, *see* 18 U.S.C. § 1964(a), and neither diversity jurisdiction nor any other form of jurisdiction exists that would grant this Court authority to hear this action.  Plaintiff additionally brings state causes of action for conversion and tortious interference with contracts.  *See* Pl's Cmplt. ¶¶ 48-57.    Accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff, *see Baker*

---

[1]Plaintiff's complaint references 18 U.S.C. §§ 1964(a) and (c).  Section 1964(a) grants this Court jurisdiction to entertain violations of section 1962, and 1964(c) enumerates the remedies available for violations of RICO and grants any injured person the right to bring a private cause of action against the alleged offender(s).

*v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), the Court provides the following factual recitation.[2] Plaintiff Pan American Maritime, Inc. ("Plaintiff" or "Pan American"), is a Texas corporation that leases and uses land at the Port of Brownsville ("the Port") for the salvaging and breaking-up of barges and other vessels.  Pan American subleases the land from Gulmar, Inc.  Gulmar, in turn, leases the land from the Brownsville Navigational District ("BND").  Defendant Esco Marine, Inc. ("Defendant" or "Esco") is also a Texas corporation.  Esco leases from the BND the land adjacent to Pan American's land.  Defendants Richard Jaross, Andrew Jaross, and Emilio Sanchez are employees of Esco.

Plaintiff alleges that in mid 2004, Esco began to deposit substantial amounts of soil on its land, which it subleased from Gulmar.  Plaintiff contends Defendant Andrew Jaross trespassed on Gulmar's land in an attempt to threaten Gulmar and Plaintiff.  This alleged trespass was apparently part of Defendants' efforts to warn Plaintiff against interfering with Esco's business and expansion onto the land leased by Gulmar and subleased by Pan American.  According to Plaintiff, Defendants sent surveyors onto its land who placed markers delineating the land boundaries.  Andrew Jaross informed Gulmar that Esco owned light poles, two buildings that were living quarters, and other materials located on the land occupied by Gulmar and Pan American.

Plaintiff attaches three fax letters as exhibits to its complaint.  In essence, these letters outline a dispute between the parties concerning both the land boundaries between the tenants and the ownership of personal property located on the disputed land.  According to these fax letters, Esco took over the 8.56 acres of land adjoining the western section of Plaintiff's land.  The letters attached to Plaintiff's complaint explain Esco's position on the land dispute and state Esco expanded onto Plaintiff's land after the Port of Brownsville provided notification to Plaintiff or Gulmar and after the Board of Directors approved the expansion. *See* Ex. A.  Esco indicated in its second fax letter that BND had previously asked Plaintiff, or Gulmar, to remove certain items from the property.  These items, according to Esco, were

---

[2]Plaintiff mentions in its response that Defendants provide an alternative factual recitation.  In this opinion, the Court only considers Plaintiff's allegations contained in its complaint and attached letter exhibits.

never removed, and Esco understood that everything on the property would convey to them. Esco indicated that several items, such as pieces of iron, were removed from Esco's property and placed on Pan American's property, and conversely that pieces of fiber glass and other waste were moved from Pan American's side of the property and placed on Esco's property. Esco indicated in the letters that it would allow Plaintiff to remove two modules[3] if Plaintiff removed them within 10 days, gave Esco the option to buy the modules at $15,000.00 each, with the offer remaining open for 12 months, and removed all other materials and debris from Esco's property.  In a final fax letter, Esco requested that Plaintiff immediately stop removing the light towers located on  the 8.56 acres of land adjoining Plaintiff's property.  Esco stated the towers are fixed improvements that cannot be removed under the terms of Gulmar's former lease with the Port of Brownsville.  Esco understood that when Gulmar abandoned the property, the land and all the improvements reverted to the Port of Brownsville, and Esco is now the legal tenant of both the land and the property affixed to it.

    In response to the above described controversy, Pan American filed suit alleging five causes of action under the RICO statute.  Plaintiff cites seven predicate acts as the basis of its RICO suit: (1) theft of the living quarter modules and light poles in violation of Texas Penal Code §§ 31.03(e)(6) and (e)(5); (2) the intentional and knowing operation of heavy equipment dangerously close to an occupied building warehouse, which caused damages of $1,000,000.00 in violation of Texas Penal Code § 28.03; (3) the knowing and intentional digging in an area known to have water lines and intentional destruction of water lines on the property in violation of Texas Penal Code § 28.03; (4) the attempted assault of Plaintiff's employee by using a bulldozer as a deadly weapon in an attempt to kill, maim, or seriously injure the employee in violation of Texas Penal Code § 15.01(b)(d); (5) the knowing and intentional flooding of Plaintiff's land by elevating Esco's land, causing damage in the amount of $2,000,000.00 in violation of Texas Penal code § 28.03; (6) the intentional acting in concert and conspiring to carry on criminal activities in violation of Texas Penal Code § 71.01(a)(b); and (7) the intentional acting in concert and conspiring to engage in deadly conduct by

---

[3]The Court presumes these two modules are the same modules referenced in Plaintiff's complaint as living quarters valued at $100,000.00.  *See* Pl's Cmplt. ¶¶ 2(i) and (ii).

attempting assault on Plaintiff's employee with a bulldozer in violation of Texas Penal Code § 71.02(a)(1).  *See* Pl's Cmplt. ¶¶ 2 - 8.

## II. Rule 12(b)(6) and 12(b)(1) Standards

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."  *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000); *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247(5th Cir. 1997), quoting *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986).  The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief."  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

The standard governing a motion to dismiss under Rule 12(b)(1) is similar to that of 12(b)(6).  Pursuant to 12(b)(1), district courts have "the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  *See also Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *Kelly v. Syria Shell Petroleum Development*, 213 F.3d 841, 845 (5th Cir. 2000) (citations omitted); *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

## III.  Parties' Arguments – Failure to State a Claim and Lack of Subject Matter

**Jurisdiction**

Defendant asserts this Court lacks subject matter jurisdiction because Plaintiff fails to allege facts that constitute racketeering activity, nor has Plaintiff pled facts listed as offenses in 18 U.S.C. § 1961.  Additionally, Defendant argues Plaintiff's causes of action are centered on disputes related to real and personal property to which Plaintiff believes it is entitled because it is a sublessee of a prior tenant.  Moreover, Defendant argues the Plaintiff lacks standing because its failure to allege conduct constituting racketeering activity means Plaintiff also cannot allege an injury stemming from a violation of RICO. Alternatively, Defendant argues Plaintiff failed to state a claim for which relief may be granted because it has not alleged facts supporting the elements of a RICO claim. Furthermore, any statements made in the complaint alleging racketeering activity are legally conclusory, and do not sufficiently allege a pattern of racketeering.

Plaintiff's response addresses Defendant's arguments in a cursory manner.  Rather than respond to Defendant's arguments, Plaintiff simply states 18 U.S.C. § 1964(c) provides district courts jurisdiction to hear civil RICO actions.  Plaintiff does not, for example, address whether the predicate acts it alleges qualify as underlying state offenses for the purpose of a RICO claim.  Plaintiff merely cites to various sections of its complaint for support that Defendant's alleged illegal actions have damaged its business.  Plaintiff neglects, however, to address whether based on the factual allegations made, its claims fail as a matter of law.  For example, if the predicate acts alleged do not constitute criminal offenses for the purpose of a RICO claim, the complaint must be dismissed.

**IV.  Standard for Alleging a RICO Claim**

Congress enacted RICO to eliminate the infiltration of organized crime and racketeering activities into legitimate business.  *See Beck v. Prupis,* 529 U.S. 494, 496 (2000) ("Congress enacted . . . RICO . . . for the purpose of seek[ing] the eradication of organized crime in the United States.") (internal quotations omitted); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 913 F.2d 948, 954 (D.C. Cir. 1990) (providing legislative history).  "[E]very act of corruption or petty crime committed in a business setting" does not give rise to a claim under RICO.  *Yellow Bus Lines*, 913 F.2d

at 954.  Instead, the RICO statute was intended to address criminal activity that is
repetitive and long-term such as the use of force, threats, enforcement of illegal debts, and
corruption in the operation of business.  *Id.*

Plaintiff asserts violations of §§ 1962 (a), (c), and (d) of RICO.  The Fifth Circuit
"reduced th[ese] subsections to their simplest terms:"

> (a) a person who has received income from a pattern of racketeering activity cannot
> invest that income in an enterprise;
> . . .
>
> (c) a person who is employed by or associated with an enterprise cannot conduct
> the affairs of the enterprise through a pattern of racketeering activity; and
>
> (d) a person cannot conspire to violate subsections (a), (b), or (c).

*St. Paul*, 224 F.3d at 439 (citing *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995)).

RICO imposes civil and criminal liability on persons who use or invest income
derived from, acquire or maintain control of, or engage in the conduct of an enterprise
through a pattern of racketeering activity, or who conspire to do any of these acts.  *See*  18
U.S.C. § 1962.  "To state a civil RICO claim under section 1962, a Plaintiff must allege: (1)
the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Price v.
Pinnacle Brands, Inc.*,138 F.3d 602, 606 (5th Cir. 1998) (citing *Elliot v. Foufas*, 867 F.2d
877, 880 (5th Cir. 1989); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

Preliminarily, however, a Plaintiff must establish standing by alleging a violation of
the RICO statute, an injury to its business or property and a causal connection to the injury
by the violation of section 1962.  *See* 18 U.S.C. § 1964(c); *See also Price*, 138 F.3d at
606 (citing *In re Taxable Mun. Bond Sec. Litig. v. Kutak*, 51 F.3d 518, 521 (5th Cir. 1995)
("The standing provision of civil RICO provides that '[a]ny person injured in his business or
property by reason of a violation of section 1962 of this chapter may sue therefor . . . and
shall recover threefold the damages he sustains.'").  Only persons injured "by reason of" the
commission of certain predicate acts have standing to bring suit.  *See Sedima*, 473 U.S.
at 496.  Additionally, in the Fifth Circuit, a person is considered injured "by reason of" a

RICO violation if the predicate acts constitute factual (but for) causation and legal (proximate) causation of the alleged injury.  *See Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).

"Racketeering activity includes the commission of specified state-law crimes, conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud, and certain other offenses."  *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 903-04 (2d Cir. 1996).  Section 1961(1) enumerates the various state offenses that qualifying as predicate acts to a RICO claim: murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene material, or drug offenses.  *See* 18 U.S.C. § 1961(1).  Thus, only crimes prohibited in state statutes and listed in section 1961(1) can serve as predicate offenses for the purpose of a RICO claim.  *See Ennis v. Edwards*, 2003 WL 1560113, at *4 n.16 (E.D. La. Mar. 25, 2003).  Moreover, "'[a] pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity.'"  *See In re Mastercard Int'l, Inc.*, 313 F.3d 257, 261 (5th Cir. 2002) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)) (other citations omitted).

## V.  Analysis

Plaintiff's complaint fails for two main reasons.  First, the predicate acts alleged do not involve one of the predicate acts listed in the RICO statute.  *See S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (holding that standing to sue under RICO only exists if Plaintiff's business or property has been injured by specified predicate acts, and Plaintiff may only recover to the extent he has been injured by the conduct constituting the violation).  Second, Plaintiff does not adequately allege a pattern of racketeering activity.

### A.  Racketeering Activity – Predicate Acts

Plaintiff alleges various violations of state law as predicate offenses to its RICO claim: theft of living quarters modules and light poles, *see* Tex. Penal Code §§ 31.03(e)(5) & (e)(6); criminal mischief for the damage, destruction, and tampering of property*, see*

Tex. Penal Code § 28.03; criminal attempt to commit an aggravated offense, s*ee* Tex. Penal Code § 15.01(b); and conspiracy to commit a criminal offense, s*ee* Tex. Penal Code § 71.01(b).  Defendant argues that none of these offenses constitute predicate acts under RICO, and thus Plaintiff has failed to state a claim upon which relief may be granted. The Court agrees.

Predicate acts for racketeering purposes must involve certain specified crimes.  As previously mentioned, section 1961(1) enumerates the various state offenses that can serve as predicate offenses for the purpose of a RICO claim.  A racketeering activity means any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or drug offenses.  *See* 18 U.S.C. § 1961(1).  Plaintiff provides no response to Defendant's argument that the alleged acts do not qualify as racketeering activity, except to state "[t]he two or more criminal acts that constitute a pattern of racketeering activity within the meaning of RICO are outlined in ¶¶ 2-8 of the Original Complaint."  Pl's Response, at p. 4 [Dkt. No. 17].

Courts have consistently held that "acts that constitute theft under state law are not predicate acts for racketeering activity."  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1002 (S.D. Tex. 1995) (citing *Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F.Supp. 1114, 1136 (E.D.N.Y. 1992)); *Jordan v. Berman*, 758 F.Supp. 269, 274 (E.D. Pa. 1991); *see also Toms v. Pizzo*, 4 F.Supp.2d 178, 183 (W.D.N.Y. 1998) ("[s]imple theft is not one of the crimes constituting a predicate act for purposes of establishing a pattern of racketeering activity."); *United States v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995).  Plaintiff's other allegations of criminal mischief, attempted assault, and conspiracy to commit these acts also do not constitute predicate offenses for the purpose of establishing racketeering activity.  Nor do Plaintiff's allegations involve bribery or extortion.  "A Plaintiff may not convert state law claims into a federal treble damage action simply by alleging that wrongful acts are a pattern of racketeering activity related to an enterprise."  *Bonton*, 889 F.Supp. at 1002 (citing *King v. Lasher*, 572 F.Supp. 1377, 1382 (S.D.N.Y. 1983).  Without any predicate acts, Plaintiff cannot

8

establish a pattern of racketeering activity.

### B. Pattern of Racketeering Activity

Notwithstanding the fact that Plaintiff has failed to allege any qualifying predicate acts to support its RICO claim, the Court discusses whether Plaintiff has adequately alleged a pattern of racketeering activity.  As stated, a "pattern of racketeering activity" requires the Plaintiff to establish at least two predicate acts of racketeering that are related and pose a threat of continued criminal activity.  *See, e.g., H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 241 (1989).  Although two predicate acts are the minimum number of acts required to demonstrate a pattern of racketeering activity, two acts may not be sufficient.  *See Sedima*, 473 U.S. at 496 n.14.  Additionally, "[t]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *HJ*, 492 U.S. at 239.

Of the two requirements, relatedness and continuity, the former is the least cumbersome.  A Plaintiff must simply show that predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.* at 240.  The continuity requirement is more difficult to define.

In *H.J., Inc. v. Northwestern Bell Telephone*, the Supreme Court held the Plaintiff sufficiently stated a RICO claim when it alleged Northwest Bell sought to influence, in the performance of their duties, members of a state board responsible for determining the rates Northwestern Bell could charge.  Plaintiff alleged that over a period of six years, Northwestern Bell in fact caused the commissioners on the board to approve rates for the company in excess of a fair and reasonable amount by making cash payments, and paying for parties, meals, tickets to sporting events, etc.  Plaintiff alleged these actions constituted predicate acts under the state's anti-bribery statute and state common law.  *See H.J., Inc.*, 492 U.S. at 250.  The Supreme Court held the alleged acts, if proven, could satisfy the relationship and continuity requirements of a RICO claim.  The Court elaborated:

9

The acts of bribery alleged are said to be related by a common purpose, to influence commissioners in carrying out their duties in order to win approval of unfairly and unreasonably high rates for Northwestern Bell.  Furthermore, petitioners claim that the racketeering predicates occurred with some frequency over at least a 6-year period, which may be sufficient to satisfy the continuity requirement. Alternatively, a threat of continuity of racketeering activity might be established at trial by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise . . . .

*Id.* at 250.

Thus, continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* at 241.   "'The term 'pattern' itself requires the showing of a relationship' between the predicates, . . . and of 'the threat of continuing activity.'"  *H.J., Inc.*, 492 U.S. at 240 (citations omitted).   "'It is this factor of *continuity plus relationship* which combines to produce a pattern.'"  *Id.* (citations omitted).  As illustrated in the quoted excerpt above, at least three examples of activity that would establish a threat of continued racketeering are: (1) predicate acts inherently involving a distinct threat of long-term criminal activity; (2) an entity that exists for the purpose of engaging in the criminal activity; or (3) predicate acts that constitute the regular way of conducting an ongoing legitimate business.  *Id.* at 242-43.

In the present case, Plaintiff mentions in a conclusory manner that the relevant time frame for this action is "on or about 2003 through on or about October 26, 2004."  Pl's Cmplt. ¶ 16.  Plaintiff does not, however, specify when the predicate acts occurred during that time.  Plaintiff has alleged only predicate acts or offenses that were discrete acts or isolated events related to a specific property dispute with no threat of continuity. Nor does Plaintiff present any facts that allude to continued, repeated conduct forming the basis for its RICO claim.  In fact, the three fax letters Plaintiff attaches to its complaint only reference the property disputes between the parties in October 2004.  Nor does Plaintiff allege the predicate acts repeatedly occurred during a closed period of time.  The alleged theft of the living quarter modules and light poles occurred once, and the alleged act was completed.

As for the other predicate acts, Plaintiff has not adequately alleged they occurred over the course of a period of time or that they are sufficiently related to one another to constitute a pattern of racketeering.  "Short-term criminal conduct is not the concern of RICO." *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991); *see also, e.g., H.J.,*492 U.S. at 241 ("Predicate acts extending over a few weeks or months do not satisfy [the continuity] requirement."); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139-40 (5th Cir. 1992).

Thus, even assuming Plaintiff has sufficiently alleged "racketeering activity," it has failed to allege the second essential element of a RICO claim–a *pattern* of racketeering activity.  The Court finds Plaintiff's allegations of a pattern of racketeering activity, all of which involve Defendants' actions surrounding their alleged taking of certain personal property and assaults, to lack the element of continuity and threat of future criminal activity.

### C.  Fraud

Plaintiff alleges a scheme to defraud separate from the predicate acts discussed in this opinion and divorced from the causes of action listed in the complaint.  In essence, Plaintiff alleges Defendants devised and participated in "a scheme and artifice to defraud and to steal, and for obtaining property by means of false and fraudulent pretenses, representations, and theft, and to conceal thefts by false and fraudulent pretenses, representations, false declarations, obstructions or justice and perjury."  Pl's Cmplt. ¶ 17.

If Plaintiff intends to assert a generic fraud claim as a predicate act to its RICO claim, it has failed: "[i]n all averments of fraud, or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s particularity requirement applies with equal force to a predicate act in a RICO claim.  *See Tel-Phonic Servs.*, 975 F.2d at 1138; *Elliot*, 867 F.2d at 880.  Plaintiff must allege at a minimum the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby.'"  *Tel-Phonic Servs.*, 975 F.2d at 1139 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)).

11

Plaintiff's allegations utterly fail to meet the particularity requirements of Rule 9(b).

### D. Conspiracy

Plaintiff alleges in its first and second causes of action that Defendants violated 18 U.S.C. § 1962(d), which is a conspiracy violation of RICO.  A conspiracy to violate RICO has three elements: "(1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestations of an agreement to participate in the conduct of the affairs of an enterprise; and (3) an overt act, which need not be a crime, in furtherance of the conspiracy."  Bonton, 889 F.Supp. at 1005 (citing *United States v. Sutherland*, 656 F.2d 1181, 1187 n. 4 (5th Cir. 1981))

Plaintiff has failed to adequately allege a violation of 18 U.S.C. § 1962(c), which makes it unlawful for "a person . . . employed by or associated with an enterprise [to] conduct the affairs of the enterprise through a pattern of racketeering activity."  "[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO. . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."  *Beck v. Prupis*, 529 U.S. 494, 505 (2000).  Plaintiff's failure to allege a violation of § 1962(c) is fatal to Plaintiff's conspiracy claim under section 1962(d).  Moreover, Plaintiff fails to allege there was an agreement to commit the predicate acts, which is a core element of a RICO civil conspiracy claim.  *See Tel-Phonic Servs.*, 975 F.2d at 1140 (citations omitted).

### VI.  Lack of Subject Matter Jurisdiction - Standing

Standing is generally a threshold consideration for the court to consider before addressing the merits of a motion to dismiss.  As some courts have discussed, however, the RICO standing provision is unique because a "civil plaintiff has standing to assert a civil cause of action only if a violation of § 1962 proximately caused his injuries."  *In re Mastercard Int'l, Inc.*, 132 F.Supp.2d 468, 495 (E.D. La. 2001).  Section 1964(c) lays out the civil Rico standing requirement and provides that only persons who have been injured "by reason of" the commission of predicate acts have standing to bring suit.  *See Sedima*, 473 U.S. at 496.  In the Fifth Circuit, an injury "by reason of" a RICO violation can only exist

if the predicate act constitutes a factual (but for) causation of the alleged injury and the legal (proximate) causation of the alleged injury.  *See Price*, 138 F.3d at 607 (holding plaintiffs failed adequately to allege the causation element of RICO standing because "[s]ection 1964(c) requires that a compensable injury be 'by reason of' the defendant's substantive violations. . ."); *Ocean Energy II*, 868 F.2d at 744; *Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992) ("a plaintiff has statutory standing to bring a claim so long as the defendants' predicate acts constitute both a factual and proximate cause of the plaintiff's alleged injury.").

Normally, whether the Court has subject matter jurisdiction and whether the Plaintiff has failed to state a claim upon which relieve may be granted are separate and distinct matters for the Court to decide.  *See, e.g., Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 (5th Cir. 1989).  Moreover, where the Plaintiff has clearly presented claims based in federal law and the allegations are not "clearly concocted for the sole purpose of obtaining federal jurisdiction" or "wholly insubstantial and frivolous," the Court has subject matter jurisdiction over the claims, even if the Court dismisses the claims for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  *Id.* (citing *Bell v. Hood*, 327 U.S. 678 (1946)). Many courts, however, have determined that "lack of RICO standing does not divest the district court of jurisdiction over the action, because RICO standing, unlike other standing doctrines, is sufficiently intertwined with the merits of the RICO claim that such a rule would turn the underlying merits questions into jurisdictional issues."  *Lerner v. Fleet Bank,* 318 F.3d 113, 116-17 (2d Cir. 2003) (affirming "the district court's dismissal of plaintiffs' civil RICO claim because the alleged pattern of racketeering activity was not the proximate cause of plaintiffs' injuries," but doing so "not under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, . . . but rather under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.").

In light of the above standard, it was more expeditious for the Court to first determine whether a § 1962 violation occurred.  Plaintiff failed to state a cause of action under §§ 1962(a), (c), and (d) because it did not allege predicate acts supporting an injury

"by reason of" a RICO violation.  Without such predicate acts leading to an injury, Plaintiff lacks standing to bring this RICO claim.  Although this deficiency would normally lead the Court to determine it lacks subject matter jurisdiction to entertain the claim, the Court will instead dismiss the RICO claim under Federal Rule of Civil Procedure 12(b)(6).

### VII.  Supplemental Jurisdiction

Judicial economy, convenience, fairness to litigants, federalism, and comity are all factors the district court must consider in determining whether it should exercise supplemental jurisdiction over remaining state claims.  *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7 (1988) (citations omitted).  Dismissing state claims after federal claims are dismissed is the general rule.  *See id.* at 585.

In *Parker & Parsley Petroleum Co. v. Dresser Indus.*, the Fifth Circuit held a district court abused its discretion when it dismissed federal RICO claims, but refused to surrender jurisdiction over supplemental state claims.  972 F.2d 580 (5th Cir. 1992).  There, the district court reasoned that "dismissal would be a tremendous financial drain to all the parties as well as a waste of judicial resources."  *Id.* at 584.  Despite substantial development in the case, the district court's ruling on a number of discovery matters, and a trial that was only weeks away, the Fifth Circuit determined the district court should not have exercised supplemental jurisdiction because discovery had not been completed, they were not on the eve of trial, and the parties were not ready for trial.  *Parker & Parsley Petroleum Co.*, 972 F.2d at 587.  The Fifth Circuit noted that "when the single federal-law claim is eliminated at an 'early stage' of the litigation, the district court has a 'powerful reason to choose not to continue to exercise jurisdiction.'" *Parker & Parsley Petroleum Co.*, 972 F.2d at 585 (citing *Carnegie-Mellon*, 484 U.S. at 351).

In *Newport Ltd. v. Sears, Roebuck, and Co.*, the Fifth Circuit determined a district court abused its discretion in not retaining jurisdiction after the federal Rico claims were dismissed.  In that case, "after four years of litigation produced 23 volumes and thousands

14

of pages of record, the preparation of a pretrial order exceeding 200 pages, over a hundred depositions, and according to counsel nearly two hundred thousand pages of discovery production, the declining to hear [that] case on the eve of trial constituted an abuse of discretion." 941 F.2d 302, 307-08 (5th Cir. 1991).

In the present case, the Court is dismissing Plaintiff's only federal claim, and no diversity jurisdiction exists.  At such an early stage of the proceedings–the Court has not held an initial pretrial conference, nor has it entered a scheduling order–the Court should **dismiss without prejudice** the state law claims, and thus not exercise its supplemental jurisdiction over the state law claims.

### VIII.  Conclusion

Plaintiff has failed to sufficiently plead the requisite predicate acts or a pattern of racketeering activity as a basis of its RICO claim.  Moreover, Plaintiff failed to plead a conspiracy claim under the RICO statute.  As a result, the Court **DISMISSES** Plaintiff's claims under 18 U.S.C. §§ 1962(a), (c), & (d), and thus **GRANTS** Defendant's Motion to Dismiss [Dkt. No. 14].  Additionally, the Court **DENIES** Defendant's Motion to Reconsider the Court's order granting Plaintiff leave to file a late response to Defendants' Motion to Dismiss.

DONE this 10th day of May, 2005, at Brownsville Texas.

_____
–
Hilda G. Tagle
United States District Judge

15